**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**NANCY F. KING,  o/b/o S.K.[1],**

        **Plaintiff,**

**-vs-**                                          **Case No.  6:07-cv-537-Orl-22DAB**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

        **Defendant.**

_____

**REPORT AND RECOMMENDATION**

**TO THE UNITED STATES DISTRICT COURT:**

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) terminating the Supplemental Security Income (SSI) benefits her minor child had received for approximately four years.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Oral argument was requested by Plaintiff and consideration of that request is **DEFERRED** to the District Judge.

For the reasons that follow, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **REVERSED and REMANDED.**

---

[1] Pursuant to CM/ECF Administrative Procedures on "Privacy Protection," minor children's names are not to be used, and instead, initials are to be used.

## *I. BACKGROUND*

**A.     Procedural History**

Plaintiff Nancy King filed an application for childhood disability for a period of Supplemental Security Income (SSI) filed for the minor child, S.K. (the "Child") and the Child was found to be disabled beginning September 21, 2000 due to post-traumatic stress disorder (neither the decision nor the notice is in the administrative record, but the ALJ references the decision). R. 10, 21. The SSA subsequently decided the Child had improved on May 1, 2005. R. 10, 38-41. The cessation of benefits was affirmed on reconsideration. R. 49. Plaintiff requested a hearing (R. 42-43), which was held on June 26, 2006, before Administrative Law Judge Philemina M. Jones (hereinafter referred to as "ALJ"). R. 380-406. In a decision dated September 1, 2006, the ALJ found Plaintiff had medically improved and ceased to be disabled as defined under the Act as of May 2005. R. 22.

Plaintiff timely filed a Request for Review of the ALJ's decision. R. 370-71. In her request for review to the Appeals Council, Plaintiff challenged the ALJ's refusal to recuse herself in the case because Plaintiff's counsel had filed bias or judicial misconduct claims against this ALJ in four previous cases in which counsel represented claimants, beginning in July 2005. R. 370-71. Plaintiff filed a request on June 17, 2006 requesting that the ALJ recuse herself from the case (R. 408); the ALJ denied the request at the hearing. R. 371, 380[2]. The ALJ denied the request and advised that Plaintiff had the right to present her objections to the Appeals Council. R. 371. Following the ALJ's unfavorable decision, Plaintiff's counsel sent a written complaint to the Appeals Council. R. 370. The Regional Chief Administrative Law Judge, in response to counsel's written complaints about the

---

[2]The ALJ references her written denial of the request to recuse, which is listed in the table of contents as "Ex. 4B," but was not in the original Record. Only the first page of the ALJ's (unsigned) response was filed as part of the "Supplemental Certification" on October 9, 2008. Doc. No. 15, page numbered "409."

ALJ in a prior case, also stated that it was up to the Appeals Council to consider allegations of unfairness, bias, and misconduct. R. 371. As such, Plaintiff's counsel made such a request for a full investigation into the specific allegations outlined in the letter to the Appeals Council in this case. R. 370-71 (discussing the prior cases in detail). Plaintiff's counsel specifically requested a remand for the Child to receive a new hearing before a different ALJ. R. 371.

The Appeals Council denied the request for review on February 2, 2007 with the following explanation:

> In looking at your case, we considered the reasons you disagree with the decision in the material listed on the enclosed Order of Appeals Council. We found that this information does not provide a basis for changing the Administrative Law Judge's decision.
>
> You indicate that the Administrative Law Judge exhibited bias by retaliating against claimants which your attorney has represented since he (your attorney) filed a formal complaint about the Administrative Law Judge's treatment of another claimant he had represented previously. From a study of the entire record, including the hearing decision and the recording of the hearing testimony, the Appeals Council finds no evidence that the hearing was unfair or that the Administrative Law Judge decided your case on a basis other than her evaluation of the issues and the evidence of record.

R. 5. Plaintiff filed this action for judicial review on March 27, 2007. Doc. No. 1.

### B.     Medical History and Findings Summary

By way of summary, the Child was previously diagnosed previously with aggressive and oppositional defiant behavior by the Devereux Treatment Center. R. 12. Posttraumatic Stress Disorder was diagnosed by a psychologist in 2000, based on restricted and blunted affect, nightmares of physical abuse, insomnia, flashbacks of abuse, acting out behaviors such as throwing objects when angry with her brother, inattention (does not stay focused on tasks), compulsive behaviors (such as sucking her thumb and picking at hair), behavior problems in school (defiance toward teachers,

cursing, and skipping classes). R. 217.  The Child was found disabled beginning September 21, 2000 in a decision from January 10, 2001.  R. 10, 21.

The Child's problems began at age four, when she witnessed physical and sexual abuse of her mother by her father.  R. 217.  At age five, she was the victim of severe physical abuse by her father, involving "beatings and knife cuts."  R. 218[3].  The abuse was reported and her father was incarcerated, reportedly for five years.  R. 217-18.  The Child and her brother were subsequently placed in foster care by DCFS because of suspected physical abuse by her father.  R. 217.  She was in foster care for two years until her mother reportedly obtained custody of her again in 2002.  R. 217.  The mother reported having five other children, which were all adopted at birth due to her cocaine use; she has not used cocaine since approximately 1996.  R. 217.  Her mother reportedly used cocaine during the pregnancy with the Child.  R. 218.  At the time Plaintiff was determined to have medically "improved" by May 2005, the Child was living with her biological mother, brother, and her mother's boyfriend (also referred to as the Child's stepfather in some records).

After reviewing the Child's medical records and the testimony of the Child and her mother (Plaintiff), the ALJ found that the Child suffered from bipolar disorder, an attention deficit hyperactivity disorder, and post traumatic stress disorder, "severe" medically determinable impairments, but not severe enough any longer to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, as it did at the time of the most recent favorable determination (in January 2001).  R. 21, Finding 4. The ALJ further considered the Child's and Plaintiff's (her mother's) statements and found their "assertions that the claimant's condition has resulted in significant functional limitations are less persuasive of a continuing disability in view of

---

[3]This history (slightly inconsistent on the timing but not the criminal allegations) was indicated to Dr. Beers on background information provided by the Department of Disability Determinations, to assist in the consultative examination of the Child. R. 217-18.

the totality of the evidence," because it was not consistent with the testimony of the teachers and the Child was non-compliant with her medications.  R. 20.

The ALJ found that the evidence established the following functional limitations from the Child's impairments and reasonably related symptoms: no limitations in the domains of in acquiring and using information, moving about and manipulating objects, caring for herself, and health and physical well-being; and more than slight limitations in attending and completing tasks, and interacting and relating with others.  R. 21, Finding 7.  Based on these limitations, the ALJ found that the Child's impairments did not functionally equal the requirement of a listing in the Listing of Impairments.  R. 21.  Accordingly, the ALJ determined that the Child was no longer under a "disability" as of May 1, 2005.  R. 23, Finding 8.

Plaintiff asserts a single point of error. She argues that the Appeals Council erred in not ordering the ALJ to recuse herself from the case because Plaintiff's counsel had filed a series of complaints against her which remained unresolved.  However, Plaintiff mysteriously fails to discuss the specific evidence present in this record which would mandate a reversal.  Plaintiff's Memorandum states: "The medical records are not relevant because substantial evidence is not an issue."  Doc. No. 16 at 2.  Plaintiff's entire Memorandum revisits the problems in five other cases in which Plaintiff's counsel, Mr. Culbertson, sought recusal of the same ALJ and filed complaints against her.  Plaintiff seeks to have the case remanded to the Commissioner with a demand for a "thorough and proper investigation" of not only Plaintiff's case, but the cases of **all** claimants who have been represented by Mr. Culbertson since he filed formal complaints against the ALJ.  Doc. No. 16 at 15.  There is absolutely no authority for ordering any such investigation.  Moreover, the Court's jurisdiction is limited to the case before it and the facts of this case; the Court can not reach out to the universe of social security cases to order investigations into those that appear to contain bias by this ALJ.

On the facts of the record in the case before this Court, involving this Child, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **REVERSED and REMANDED with specific instructions to assign the case to a different ALJ**.

## *II. STANDARD OF DISABILITY AND STANDARD OF REVIEW*

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Walden v. Schweiker*, 672 F.2d 835, 838-39 (11th Cir. 1982) (internal quotations omitted).

The court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the SSA's decision. *Walker v. Bowen*, 826 F.2d 996, 1000 (11th Cir. 1987). Even if the court finds that the evidence weighs against the SSA's decision, the court must affirm if the decision is supported by substantial evidence. *Allen v. Schweiker*, 642 F.2d 799, 800 (5th Cir. 1981); *see also Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990); *Harwell v. Heckler*, 735 F.2d 1292, 1293 (11th Cir. 1984). The court may not reweigh the evidence or substitute its own judgment, even if the court finds that the weight of the evidence is against the SSA's decision. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980). While there is a presumption in favor of the SSA's findings of fact, no such presumption attaches to the ALJ's legal conclusions. *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988); *Walker*, 826 F.2d at 999.

For the initial determination of entitlement to Supplemental Security Income benefits for an individual under the age of eighteen, the Child must have a "medically determinable physical or

mental impairment, which results in marked and severe functional limitations, and . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i); 20 C.F.R. § 416.906. The rules[4] follow the three-step sequential evaluation, under which SSA will consider: (1) whether the child is working; (2) whether the child has a medically determinable "severe" impairment or combination of impairments; and (3) whether the child's impairment or combination of impairments meets, medically equals, or functionally equals the severity of an impairment in the listings. 20 C.F.R. § 416.924. Whether a child meets the "listing-level severity" standard is dependent upon whether the child has marked limitations in two broad areas of development or functioning or extreme limitation in one of those areas. 20 C.F.R. § 416.926a. Under the regulations for children, there are six domains used to determine a child's functional equivalence: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a.

However, in a cessation of benefits like the case at hand, the standard is applied using a modified standard. The Commissioner must first consider whether there has been "medical improvement" in the child's impairment. In a child's disability claim, medical improvement means a "decrease in the medical severity of [the child's] impairment(s) which was present at the time of the most recent favorable decision that [the child was] disabled or continued to be disabled." 20 C.F.R. § 416.994a(c). If there has been medical improvement, the SSA must consider whether the impairments(s) the child had at the time of the most recent favorable determination or decision now

---

[4] On August 22, 1996, Congress enacted the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 ("the 1996 Act"), which amended the statutory standard for children seeking SSI benefits based on disability such that a child seeking SSI benefits based on disability will be found disabled if he or she has a medically determinable impairment "which results in marked and severe functional limitations," and which meets the statutory duration requirement. *Brawdy v. Barnhart*, No. Civ.A. SA01-CA-0835F, 2003 WL 1955839, at *3-4 (W.D. Tex. Mar. 27, 2003) (internal citations omitted). The final rules became effective on January 2, 2001. *Id.*

meets or medically or functionally equals the severity of the listing it met or equaled at that time. 20 C.F.R. § 416.994a(a)(1). If that impairment does not still meet or equal the severity of that listed impairment, the SSA will consider whether the child is currently disabled based on the current impairments, including any the child did not have at the time of the earlier most recent favorable determination. 20 C.F.R. § 416.994a(b)(3).

### *III. ANALYSIS*

#### A. **Standard for Recusal of ALJ**

The Social Security Act "contemplates that disability hearings will be individualized determinations based on evidence adduced at a hearing." *Heckler v. Campbell*, 461 U.S. 458, 467 (1983). A claimant is entitled to a hearing that is both full and fair. *Clark v. Schweiker*, 652 F.2d 399, 404 (5th Cir. 1981). The regulations governing Title II dictate that "[a]n administrative law judge shall not conduct a hearing if he or she is prejudiced or partial with respect to any party or has any interest in the matter pending for decision." 20 C.F.R. § 404.940.

When a claimant objects to the assignment of a particular ALJ to his or her case, he or she must notify the ALJ at the earliest opportunity. *Id.* If the ALJ withdraws, the Associate Commissioner for Hearings and Appeals or his delegate will appoint another ALJ to conduct the hearing. *Id.* If the ALJ declines to recuse herself, the claimant may seek reconsideration after the hearing by raising the issue before the Appeals Council. *Id.*

In this case, Plaintiff's counsel sent a letter to the ALJ shortly after he was appointed to represent Plaintiff by Orange County Legal Aid. R. 408. The ALJ denied the request to recuse herself from the case in written form and without elaboration orally at the hearing. R. 380, 409. Plaintiff filed a very specific and detailed objection regarding the basis for ALJ's recusal in the request for review to the Appeals Council. R. 370-71. The Appeals Council failed to address this charge in denying

Plaintiff's request for review, stating only that "[f]rom a study of the entire record, including the hearing decision and the recording of the hearing testimony, the Appeals Council finds no evidence that the hearing was unfair or that the Administrative Law Judge decided your case on a basis other than her evaluation of the issues and the evidence of record."  R. 5.

As the Eleventh Circuit previously held in *Miles v. Chater*, "[t]he ALJ plays a crucial role in the disability review process. Not only is [she] duty-bound to develop a full and fair record, [she] must carefully weigh the evidence, giving individualized consideration to each claim that comes before [her]. Because of the deferential standard of review applied to [her] decision-making, the ALJ's resolution will usually be the final word on a claimant's entitlement to benefits.  The impartiality of the ALJ is thus integral to the integrity of the system. 84 F.3d 1397, 1401 (11th Cir. 1996) (citing *Johnson v. Mississippi*, 403 U.S. 212, 216 (1971)).

As noted above, Plaintiff has not made any arguments based on the record in this case, and the Court will not transform a benefits denial appeal into the equivalent of a mandamus action. Nonetheless, the Court will discharge its review function by conducting its own examination of the record of this decision.  One significant matter appears: the ALJ's denial of Mr. Culbertson's reasonable request for thirty days to submit additional and important documents not in the record. This unexplained denial was arbitrary and capricious and is tangible evidence of unfairness on the part of the ALJ.

Plaintiff initially proceeded *pro se* in attending a hearing on April 11, 2006.  R. 374.  At that time, the ALJ explained to Plaintiff that she had a right to representation and would be allowed 30 days to find a representative, if possible (from a list the SSA supplies).  R. 376.  Plaintiff's counsel, Mr. Richard Culbertson, Esq., was not appointed by Orange County Legal Aid until June 2006.  R. 408.  Plaintiff's second hearing, with Mr. Culbertson representing her, was held on June 26, 2006.  R.

378. During the course of the hearing, the ALJ acknowledged that she had received Plaintiff's request for recusal (R. 408) and had responded in writing (R. 409). After the ALJ listed the exhibits in the hearing record at the June 26 hearing, Mr. Culbertson requested a thirty-day extension to submit two additional records he felt were relevant:

> I have no objection to those documents, Your Honor, but I do need to bring to your attention that things are missing from the record. There is no update from Dr. [Qadir- the treating psychiatrist] for the last year. There was a Florida hospitalization last year that wasn't in there and I just got involved in the 11th hour. I have requested those records, but they haven't come in yet. So I would request that you keep the record open for 30 days after the hearing so I can get those.

R. 381. The ALJ responded without any explanation:

> I'll keep the record open for 10 days after the hearing and the documents indicated will be admitted into evidence for consideration in this case.

R. 382.

Given the history of clashes Mr. Culbertson sets out in detail in Plaintiff's Memorandum (Doc. No. 16), the ALJ's refusal, without explanation, to allow Mr. Culbertson his requested thirty days to complete the record with perhaps the two most important pieces of evidence in the case – the treating psychiatrist's medical records[5] for the prior year and a recent hospitalization – is the epitome of arbitrariness. Such a decision reflects at a minimum that the process was compromised in this case. There was no information more important to this case than the treating psychiatrist's recent notes. The ALJ's refusal is unexplained and certainly goes against her duty to develop a complete record. In light of her knowledge of Mr. Culbertson's late entry into the case, the ten-day limitation for the addition of the records was arbitrary and capricious. Plaintiff is entitled to an unbiased reconsideration of whether she had medically improved before a different ALJ. *See* 20 C.F.R. § 404.940 (providing

---

[5]Although not listed in the list of exhibits, updated records from Dr. Qadir were received and included in the Record as Exhibit 12F. R. 267.

as a remedy the holding of a new hearing before another ALJ); *see also Miles v. Chater*, 84 F.3d 1397, 1400-01 (11th Cir. 1996); *Ventura v. Shalala*, 55 F.3d 900 (3d Cir. 1995).

### B. On the merits, the decision was not based on substantial evidence

The Commissioner contends that substantial evidence supports the ALJ's decision of the Child's improvement. Doc. No. 18. The Court finds that the ALJ erroneously rejected the opinions of the nurse practitioner for Dr. Qadir, the Child's treating psychiatrist, even though the record is rife with evidence of the Child's continued bipolar disorder, an attention deficit hyperactivity disorder, and post traumatic stress disorder, problems through May 2005. Dr. Qadir treated the Child from January 2004 through 2006, and his nurse practitioner, Carol Sevlie, ARNP, submitted an assessment form dated July 2006 opining that the Child had extreme limitations in attending and completing tasks and interacting and relating with others; with marked limitations in acquiring and using information and caring for herself. R. 280. One such "extreme" or two such "marked" limitations would result in the Child remaining disabled, according to the regulations for children. (Nurse Practitioner Sevlie marked no limitation or less than marked limitations in the domains of moving about and manipulating objects and health and physical well-being. R. 280.)

Generally, substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis v. Callaghan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See*

*Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements.)

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnor v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) the medical evidence supporting the opinion; 4) consistency with the record as a whole; 5) specialization in the medical issues at issue; 6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1527(d)(2).

The ALJ rejected the opinion of Nurse Practitioner Sevlie as "somewhat exaggerated and inconsistent with the medical evidence in its entirety and Dr. Qadir's own report." R. 20. According to the record, what the ALJ describes as "Dr. Qadir's report" is similarly also Nurse Practitioner Sevlie's report, since she is the "dictating provider" who actually interviewed the patient and dictated the treatment notes from December 2005 to May 2006 (R. 272-76), with Dr. Qadir also signing off on the treatment notes on each occasion. R. 272. The ALJ then quotes selectively from the Tri-County Psychiatric Associates notes to find:

> Progress notes by Dr. Qadir reveal that the claimant is doing much better with medications. She loses her temper but does not hit or hurt any body. There are no symptoms of psychosis or mania. The claimant's level of energy and interest are good. She enjoys swimming and is planning to join boys and girls club. Additionally Ms. Sevlie is not a doctor of medicine and her findings are not fully supported by the

> objective medical evidence and are not binding or conclusive to establish social security disability and may be rejected. Ms. Sevlie's opinions are also not consistent with those of the claimant's teachers as discussed above. The undersigned has also considered the claimant and her mother's testimonies. However, the assertions that the claimant's condition has resulted in significant functional limitations are less persuasive of a continuing disability in view of the totality of the evidence. It is also noted that the testimony is not consistent with the testimony of the teachers, as discussed above. Also considered was the mother's statement that the claimant is non-compliant with her medications.

R. 20.

The Social Security Regulations specifically provide the following guidance on the domains of acquiring and using information and attending and completing tasks for school-aged children:

> When you are old enough to go to elementary and middle school, you should be able to learn to read, write, and do math, and discuss history and science. You will need to use these skills in academic situations to demonstrate what you have learned; *e.g.*, by reading about various subjects and producing oral and written projects, solving mathematical problems, taking achievement tests, doing group work, and entering into class discussions. You will need to use these skills in daily living situations at home and in the community (*e.g.*, reading street signs, telling time, and making change). You should be able to use increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing your own ideas, and by understanding and responding to the opinions of others. . . .
>
> When you are of school age, you should be able to focus your attention in a variety of situations in order to follow directions, remember and organize your school materials, and complete classroom and homework assignments. You should be able to concentrate on details and not make careless mistakes in your work (beyond what would be expected in other children your age who do not have impairments). You should be able to change your activities or routines without distracting yourself or others, and stay on task and in place when appropriate. You should be able to sustain your attention well enough to participate in group sports, read by yourself, and complete family chores. You should also be able to complete a transition task (*e.g.*, be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation.

20 C.F.R. §§ 416.926a(g)(2)(iv) & (h)(2)(iv).

According to the Regulations, for the domain of interacting and relating with others, the ALJ is to examine how well the child can initiate and sustain emotional connections, co-operate, comply

with rules, respond to criticism and respect the possessions of others. 20 C.F.R. § 416.926a(I).  For children between six and twelve:

> When you enter school, you should be able to develop lasting friendships with children who are your age. You should begin to understand how to work in groups to create projects and solve problems. You should have an increasing ability to understand another's point of view and to tolerate differences. You should be well able to talk to people of all ages, to share ideas, tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily understand.

20 C.F.R. § 416.926a(i)(2)(iv).

Although there were some reports within the notes from Nurse Practitioner Sevlie and Dr. Qadir of the Child "doing well on medications," the ALJ selectively ignores other treatment notes from 2006 that reflect the Child is "still having mood swings" and "tired in school"; "her grades are not that great" and "are falling"; she is "not focusing"; she is "very angry" and having "trouble paying attention." R. 273-74.  Most importantly, the ALJ ignores (in this portion of the discussion) the fact that, despite fair reports from teachers, the Child *failed* eighth grade.  Failing eighth grade in 2006 would appear to be consistent with at least a marked, if not extreme, limitation in attending and completing tasks.  The reports from teachers were completed in 2005 when the Child was in seventh grade and were, at the least, outdated.  R. 128.  While one of the teachers checked all of the boxes indicating no problems, the other teacher noted the Child had obvious problems in paying attention, working without distracting self or others; expressing anger appropriately; respecting/obeying adults in authority; taking turns in conversation; and commented, the Child is "often off task and does not complete work"; she has "outbursts"; and time-out and separate class sections were needed to control her interaction with other students.  R. 133-34.

In addition to the medical sources, the ALJ may use evidence from education personnel, such as school teachers and counselors, to determine the Child's functional limitations in the six domains.

-14-

§ 416.913(d)(2). The reports of the Child's seventh grade teachers are only somewhat relevant to her limitations in the domains of acquiring and using information and attending and completing tasks. R. 121-38. Unfortunately, the ALJ only considered reports from the Child's seventh grade teachers, a grade she passed, and inexplicably discounted the fact that she failed eighth grade. The ALJ dismissively states: "The [Child] was retained in the 8th grade, but she is in regular classes." The ALJ also cites "school records" which "reveal that the claimant has the ability to obtain good grades"; however, there are no school records in the Record, with the exception of the remarks by the two seventh grade teachers, one of which was very mixed, as quoted above. R. 121-38.

The ALJ also erred by rejecting the testimony of the Child and her mother (Plaintiff) concerning her limitations. R. 20. The mother consistently testified and the record reflects numerous reports of the Child sucking her thumb at thirteen years old, aggressiveness to other children and her parents, lack of concentration and focus, inability to bathe by herself at thirteen, problems communicating, forgetful, does not take care of hygiene or other personal needs, has few friends, she does not tell the truth, tried to "cut" arm in 2005 and wrote a suicidal note leading to hospitalization in November 2003, has to be reminded to take her medication, was suspended for defiance toward teachers and truancy; was kicked out of the boys and girls club for stabbing a boy with a pen; her best friend is ten (when she was fourteen), and suffers drowsiness from her medications. R. 53, 108-12, 117, 139, 143, 156, 159, 174, 217-19, 260, 267, 274, 277, 303-11, 332, 340, 369, 382, 383, 391, 393-94, 397, 400-02. Also inappropriate in this case is the ALJ's comment that the Child (between ages 11 and 13 years old) is "non-compliant" with her medication. She has attention deficit disorder and her intellectual functioning is in the borderline range, so the failure to take her medication is no surprise. R. 220.

The ALJ's findings in the domains of acquiring and using information, attending and completing tasks, and interacting and relating with others were not based on substantial evidence. This dubious analysis, coupled with the process issue described above, compels remand of this case. It is respectfully **RECOMMENDED** on remand that a different ALJ should be required to update the record with current psychiatric records, current school records, and updated medical records. The ALJ will hear new testimony from Plaintiff and the Child on remand, and if he or she intends to discredit it, he or she will fully explain his or her reasoning for doing so.

## *CONCLUSION*

For the reasons set forth above, the ALJ's decision is not consistent with the requirements of law and is not supported by substantial evidence. Accordingly, it is respectfully **RECOMMENDED** that the decision be **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g); and the Clerk of the Court be directed to enter judgment and, thereafter, to close the file.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on July 7, 2008.

*David A. Baker*
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy